UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| TOMEKA BARROW and ANTHONY DIAZ, Individually and On Behalf of All Others Similarly Situated, | * * * | |
| | * | **CLASS ACTION** |
| Plaintiffs, | * | |
| | * | Civil Action File No. |
| v. | * | |
| | * | 1:16-cv-03577-AT |
| JPMORGAN CHASE BANK, N.A., | * | |
| | * | **Jury Trial Demanded** |
| Defendant. | * | |
| | * | |

## <u>SECOND AMENDED COMPLAINT</u>

### INTRODUCTION

1.   Plaintiff TOMEKA BARROW ("BARROW") and plaintiff Anthony Diaz ("DIAZ," jointly the "Plaintiffs") seek redress against defendant JPMORGAN CHASE BANK, N.A. ("CHASE" or "Defendant") for having made or initiated telephone calls to their cellular telephone numbers using an automatic telephone dialing system without their prior express consent. Plaintiffs allege that Defendant's conduct violated the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"), and the regulations promulgated thereunder, 47 CFR § 64.1200, thereby invading Plaintiffs' privacy.

## PARTIES AND JURISDICTION

2.      Plaintiff BARROW is a natural person and is authorized by law to bring this

action, and at all times mentioned herein was, a "person" as defined by 47

U.S.C. § 153 (39).

3.      Plaintiff DIAZ is a natural person and is authorized by law to bring this

action, and at all times mentioned herein was, a "person" as defined by 47

U.S.C. § 153 (39).

4.      Defendant CHASE is a national association with its principal office located

at 1111 Polaris Pkwy, Columbus, OH 43240.

5.      As an association, CHASE was at all times mentioned herein, a "person" as

defined by 47 U.S.C. § 153 (39).

6.      CHASE is a nationwide provider of financial products and services and is

one of the largest providers of consumer credit in the United States.

7.      CHASE conducts its business nationwide, including throughout the State of

Georgia, and CHASE continually and systematically markets its products

and transacts business within this State and County.

8.      CHASE regularly uses the telephones to contact its customers regarding

business matters, including past due or delinquent accounts.

9.    In the course of its business, CHASE initiated telephone calls to

       BARROW's cellular telephone within Georgia.

10.   In the course of its business, CHASE initiated telephone calls to DIAZ's

       cellular telephone within California.

11.   CHASE maintains numerous branch locations in DeKalb County including

       but not limited to ones located at: 2091 North Decatur Road, Decatur, GA

       30033; 2861 North Decatur Road, Decatur, GA 30033; 2875 North Druid

       Hills Road, NE, Atlanta, GA 30329, 2782 Candler Road, Suite 25, Decatur,

       GA;  2079 South Hairston Road, Suite F and G, Decatur, GA 30035; 1215

       Caroline Street, NE, Building H, Atlanta, GA 30307; 933 North Hairston

       Road, Suite 1, Stone Mountain, GA 30083; 2102 Henderson Mill Road, NE,

       Suite 100, Atlanta, GA  30345; 3642 Flakes Mill Road, Suite 309, Decatur,

       GA  30034; 1841 Chamblee Tucker Road, Suite 1-2A, Chamblee, GA

       30341; 5197 Buford Highway, NE, Doraville, GA  30340; 5540 Chamblee

       Dunwoody Road, Dunwoody, GA  30338; 2526 Mount Vernon Road,

       Dunwoody, GA  30338;  and 3300 Clairmont Road, NE, Brookhaven, GA

       30329.

12.   CHASE also maintains many stand-alone ATM machines in DeKalb County

       from which it transacts significant business.

13.   CHASE is subject to the jurisdiction and venue of this court.

14.   CHASE was served by personal service upon its registered agent, to wit: C T

Corporation System, 1201 Peachtree Street NE, Atlanta, GA 30361.

15.   Other defendants may be discovered in the course of litigation. As such,

Plaintiffs respectfully request that this Court permit the addition of later

discovered defendants upon motion.

## SUBJECT MATTER JURISDICTION

16.   Plaintiffs bring this action for violations of the Federal Telephone Consumer

Protection Act pursuant to a private right of action conferred by Congress.

*See* 47 U.S.C. § 227(b)(3).

17.   As detailed below, as a result of Defendant's conduct, Plaintiffs have

incurred damages and concrete and particularized injuries which are real,

actually exist, and are personal to the Plaintiffs.  Such injuries were caused

by and are traceable to Defendant's conduct, and Plaintiffs seek redress in

the form of damages.

**STATEMENT OF FACTS AS TO PLAINTIFF BARROW**

18.    BARROW has been the sole subscriber and regular user of her cellular telephone service for telephone number xxx-xxx-2460 for a period in excess of four years.

19.    CHASE has initiated telephone calls to BARROW's cellular telephone number.

20.    CHASE has initiated a series of telephone calls to BARROW's cellular telephone number using an automatic telephone dialing system.

21.    CHASE used an automatic telephone dialing system to initiate calls to BARROW's cellular telephone number with regard to a residential mortgage.

22.    On or about June 1, 2016, CHASE initiated a call to BARROW during which BARROW clearly and unequivocally told the representative to contact her in writing only and not by telephone.

23.    Despite BARROW's request on June 1, 2016 that CHASE not contact her by telephone, CHASE continued to initiate calls to BARROW's cellular telephone number using an automatic telephone dialing system, including a call on June 20, 2016.

24.   Beginning on June 20, 2016, CHASE initiated at least five (5) additional calls to BARROW's cellular telephone number using its dialer.

25.   During the subject calls from CHASE, BARROW noticed a "dead air" silence delay of several seconds from the time the call was answered until a representative appeared on the telephone line.

26.   CHASE maintains contact center software which connects to its telephony hardware that together constitutes a dialing system with the capacity to make telephone calls without human intervention.

27.   The telephone calls to BARROW's cellular telephone number were initiated using CHASE's contact center software.

28.   CHASE's dialing system has the ability to store telephone numbers.

29.   CHASE's dialing system stores telephone numbers.

30.   CHASE's dialing system has the ability to generate telephone numbers to be called from a stored database for the purposes of dialing such numbers.

31.   CHASE's dialing system generates telephone numbers to be called from a stored database for the purposes of dialing such numbers.

32.   CHASE's dialing system generates telephone numbers from a stored database either at random or in an order that is preset by a dialer manager or determined by algorithm.

33.     CHASE's dialing system dials telephone numbers.

34.     CHASE's dialing system dials telephone numbers from a stored database.

35.     CHASE's dialing system has the capacity to dial from a database of stored telephone numbers without human intervention.

36.     CHASE's dialing system constitutes a system which has the capacity to store telephone numbers to be called, using a random or sequential number generator, and to dial such numbers.

37.     Calls which include several seconds of "dead air" silence prior to a live representative appearing on the line are indicative of the use of predictive dialer or other automatic telephone dialing system.

38.     All of the calls that CHASE initiated to BARROW's cellular telephone number were initiated using software which has the capacity to predicatively dial.

39.     Dialing systems, like those employed by CHASE to call BARROW, lack human intelligence and continue to call until someone intervenes to force it to stop calling.

40.     CHASE's telephone calls to BARROW were initiated using its automatic telephone dialing system (ATDS).

41.  CHASE did not have BARROW's prior express consent to contact her at her cellular telephone number using an automatic telephone dialing system

42.  To the extent that CHASE ever had BARROW's prior express consent to contact her at her cellular telephone number using an automatic telephone dialing system, BARROW revoked any such consent when she clearly and unequivocally told the representative to contact her only in writing, and not by telephone, during June 1, 2016 call.

43.  Following the June 1, 2016 call, CHASE continued to initiate calls to BARROW's cellular telephone number using an automatic telephone dialing system.

44.  CHASE initiated calls to BARROW using an automatic telephone dialing system without the prior express consent of the called party.

45.  Prior to the June 1, 2016 call, and certainly after it, CHASE knew or should have known that it was calling BARROW's cellular telephone number.

46.  In the alternative, CHASE should have conducted a simple cellular telephone number scrub using a recognized database, such as Neustar, to determine that the number upon which CHASE attempted to contact BARROW was a cellular telephone number.

47.     Continuing to initiate calls to cellular telephone numbers without conducting a cellular scrub, particularly after a request to cease doing so, was in reckless disregard of CHASE's obligations under the TCPA.

48.     It was the intent of CHASE to initiate the telephone calls to BARROW's cellular telephone number.

49.     All telephone calls made by CHASE to BARROW's cellular telephone numbers were knowingly and willfully initiated.

50.     CHASE had actual or constructive knowledge that it lacked the prior express consent of BARROW when it used an automatic telephone dialing system to initiate calls to her cellular telephone numbers.

51.     The above-described telephone calls to BARROW's cellular telephone number was not initiated by accident or mistake.

52.     Manufacturers and vendors of dialing software, hardware and equipment, such as that employed by CHASE, routinely provide to their clients manuals and other media concerning TCPA compliance, in particular scrubbing or flagging of cellular telephone numbers.

53.     Moreover, CHASE has been a defendant in several TCPA lawsuits in the past; and as such, should have been aware of the TCPA and its compliance obligations thereunder.

54.   The telephone calls to BARROW's cellular telephone were initiated intentionally using an automatic telephone dialing system.

55.   The telephone calls to BARROW's cellular telephone were initiated willfully and/or knowingly using an automatic telephone dialing system.

56.   CHASE's use of an automatic telephone dialing system to initiate calls to cellular telephone numbers did not result from accident or mistake.

57.   The telephone calls to BARROW's cellular telephone number were inconvenient, annoying, a nuisance, invaded Plaintiff's privacy interests, and temporarily occupied use of BARROW's telephone line.

58.   The telephone calls invaded BARROW's legally protected interests and the substantive statutory right not to be subjected to the type of calls prohibited by the TCPA.

## STATEMENT OF FACTS AS TO PLAINTIFF DIAZ

59.   DIAZ has been the sole subscriber and regular user of his cellular telephone service for telephone number xxx-xxx-7581 for a period in excess of four years.

60.    Sometime prior to December of 2015, CHASE began initiating a series of telephone calls to DIAZ's cellular telephone number using an automatic telephone dialing system.

61.    CHASE used an automatic telephone dialing system to initiate calls to DIAZ's cellular telephone number with regard to a residential mortgage from telephone number 800-848-9380.

62.    All of the calls that CHASE initiated to DIAZ's cellular telephone number were initiated using software which has the capacity to predicatively dial.

63.    Dialing systems, like those employed by CHASE to call DIAZ, lack human intelligence and continue to call until someone intervenes to force it to stop calling.

64.    CHASE's telephone calls to DIAZ were initiated using its automatic telephone dialing system (ATDS).

65.    On or about December 4, 2015, DIAZ, through counsel, spoke with a representative of CHASE and expressly revoked any consent that CHASE may have had to call DIAZ on his cellular telephone.

66.    On or about February 10, 2016, DIAZ once again asked CHASE to stop calling him.

67.   By requesting that CHASE stop calling DIAZ revoked any consent, should it have ever existed in the first place, and explained to CHASE that his debt had been discharged.

68.   Despite DIAZ having told CHASE to stop contacting him (including contacting him on his cellular telephone) on several occasions, CHASE continued to contact DIAZ, including but not limited to auto-dialing DIAZ's cellular telephone, through and including approximately February 16, 2016.

69.   On at least some of the calls, there were pauses and/or clicking noises heard by DIAZ before a representative of CHASE came on the line.

70.   CHASE did not have DIAZ's prior express consent to contact him at his cellular telephone number using an automatic telephone dialing system

71.   CHASE initiated calls to DIAZ's using an automatic telephone dialing system without the prior express consent of the called party.

72.   As of at least October of 2015, CHASE was aware that DIAZ was represented by counsel concerning the subject of the alleged mortgage loan debt.

73.   It was the intent of CHASE to initiate the telephone calls to DIAZ's cellular telephone number.

74. All telephone calls made by CHASE to DIAZ's cellular telephone numbers were knowingly and willfully initiated.

75. CHASE had actual or constructive knowledge that it lacked the prior express consent of DIAZ when it used an automatic telephone dialing system to initiate calls to her cellular telephone numbers.

76. The above-described telephone calls to DIAZ's cellular telephone number was not initiated by accident or mistake.

77. The telephone calls to DIAZ's cellular telephone were initiated intentionally using an automatic telephone dialing system.

78. The telephone calls to DIAZ's cellular telephone were initiated willfully and/or knowingly using an automatic telephone dialing system.

79. CHASE's use of an automatic telephone dialing system to initiate calls to cellular telephone numbers did not result from accident or mistake.

80. The telephone calls to DIAZ's cellular telephone number were inconvenient, annoying, a nuisance, invaded DIAZ's privacy interests, and temporarily occupied use of DIAZ's telephone line.

81. The telephone calls invaded DIAZ's legally protected interests and the substantive statutory right not to be subjected to the type of calls prohibited by the TCPA.

82.   All conditions precedent to bringing this action have been complied with.

## CLASS ACTION ALLEGATIONS

83.   Plaintiffs bring this action on behalf of themselves and on behalf of all

others similarly situated (the "Class").

84.   Plaintiffs represent, and are members of the Class, consisting of:

> All persons within the United States who received any
> telephone call from Defendant or its agent/s and/or
> employee/s, not sent for emergency purposes, to said
> person's cellular telephone made through the use of any
> automatic telephone dialing system and/or with an
> artificial or prerecorded message within the four years
> prior to the filing of the action.

85.   CHASE and its employees or agents are excluded from the Class.  Plaintiffs

do not know the number of members in the Class, but believes the Class

members number over one thousand. Thus, this matter should be certified as

a Class action to assist in the expeditious litigation of this matter.

86.   Plaintiffs and members of the Class were harmed by the acts of CHASE in at

least the following ways: CHASE, either directly or through its agents,

illegally contacted Plaintiffs and the Class members via their cellular

telephones by using an ATDS, thereby causing Plaintiffs and the Class

members to incur certain cellular telephone charges or reduce cellular

telephone time for which Plaintiffs and the Class members previously paid, and invading the privacy of said Plaintiffs and the Class members.  Plaintiffs and the Class members were damaged thereby.

87.  This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of the Class, and it expressly is not intended to request any recovery for personal injury and claims related thereto.  Plaintiffs reserve the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

88.  The joinder of the Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court.  The Class can be identified through CHASE's records or CHASE's agents' records.

89.  There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented.  The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

   a)   Whether, within the four years prior to the filing of this action, CHASE or its agents initiated any telephonic communications to the

Class (other than a message made for emergency purposes or made with the prior express consent of the called party) using any automatic dialing system to any telephone number assigned to a cellular phone service;

b)   Whether CHASE continued calling Plaintiffs after Defendant was asked to stop calling Plaintiffs;

c)   Whether CHASE can meet its burden of showing Defendant obtained prior express consent;

d)   Whether CHASE's conduct was knowing and/or willful;

e)   Whether Plaintiffs and the Class members were damaged thereby, and the extent of damages for such violation; and

f)   Whether Defendant and its agents should be enjoined from engaging in such conduct in the future.

90.   As persons who received at least one telephonic communication from Defendant's ATDS without Plaintiffs' prior express consent, Plaintiffs are asserting claims that are typical of the Class.   Plaintiffs will fairly and adequately represent and protect the interests of the Class in that Plaintiffs have no interests antagonistic to any member of the Class.

91.    Plaintiffs and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct.  Absent a class action, the Class will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct.  Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

92.    Plaintiffs have retained counsel experienced in handling class action claims and claims involving violations of the Telephone Consumer Protection Act.

93.    A class action is a superior method for the fair and efficient adjudication of this controversy.  Class-wide damages are essential to induce Defendant to comply with federal law.  The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal.  Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

94.    Defendant has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory

17

relief with respect to the Class as a whole.


## CAUSES OF ACTION

### COUNT ONE: MONETARY DAMAGES PURSUANT TO 47 U.S.C. § 227(b)(3)(B) FOR IMPROPER USE OF AN AUTOMATIC TELEPHONE DIALING SYSTEM

95.     The acts of Defendant constitute violations of the Telephone Consumer

Protection Act's prohibitions on the use of automatic telephone dialing

systems and the regulations promulgated thereunder.

96.     Defendant used an automatic telephone dialing system when it made and/or

initiated calls to Plaintiffs' cellular telephone number.

97.     Defendant's violations of the TCPA include, but are not limited to, the

following:

98.          Making and/or initiating telephone calls using an

automatic telephone dialing system . . . to any

telephone number assigned to a cellular telephone

service, in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and

47 CFR § 64.1200(a)(1)(iii).

99.     As a result of Defendant's actions, Plaintiffs are entitled to an award of

damages of $500.00 for each such violation.

100.   Defendant's violations were committed willfully and knowingly.

101.   Plaintiffs request the court treble damages pursuant to 47 U.S.C. §227(b)(3).

**COUNT TWO:  INJUNCTIVE RELIEF PURSUANT TO 47 U.S.C. §227(b)(3)(A) TO REQUIRE DEFENDANT CEASE UNLAWFUL USE OF AUTOMATIC TELEPHONE DIALING SYSTEMS**

102.   The acts described above constitute violations of the Telephone Consumer Protection Act by Defendant's use of an automatic telephone dialing system to make and/or initiate calls to Plaintiffs' cellular telephone numbers.  As evidenced by Defendant's continuous calling of Plaintiffs, in violation of the TCPA, Defendant's policies and procedures violate the TCPA on a continuing basis.

103.   Based on Defendant's pattern and practice of violating the TCPA, future violations will continue.

104.   For example, Chase has paid millions of dollars in recent years to settle several previous TCPA lawsuits. Despite this, violations continue.

105.   The only way to prevent the Defendant from continuing to violate the TCPA in the future is to enjoin the Defendant from further use of automatic telephone dialing systems.

106.   Accordingly, Plaintiffs seek injunctive relief pursuant to 47 U.S.C. §227(b)(3)(A) to enjoin and prohibit Defendant from use of an automatic telephone dialing system in the future.

107.   In the alternative, Plaintiffs seek injunctive relief pursuant to 47 U.S.C. § 227(b)(3)(A) to enjoin and prohibit Defendant from continuing use of an automatic telephone dialing system without the prior express consent of the called party in the future.

## COUNT THREE:  ATTORNEY FEES

108.   Defendant willingly, knowingly, and intentionally violated the TCPA in making autodialed telephone calls to Plaintiffs' cellular telephone numbers without the prior express consent of the called party.

109.   "Every intentional tort invokes a species of bad faith that entitles a person wronged to recover the expenses of litigation including attorney fees." *Tyler v. Lincoln*, 272 Ga. 118, 527 S.E.2d 180 (Ga. 2000).

110.   "There is no requirement that a viable state law claim exist in order for the jury to award litigation expenses pursuant to OCGA § 13-6-11. Rather, 'OCGA § 13-6-11 constitutes a vehicle for the collection of attorney fees' even when only a federal law claim for damages is submitted to the finder of

fact." *Fulton County v. Legacy Inv. Group, LLC*, 296 Ga.App. 822, 827 (2009).

111. Defendant has acted in bad faith, been stubbornly litigious or caused the Plaintiffs unnecessary trouble and expense, and as such, Plaintiffs are entitled to an award of litigation expenses, including a reasonable attorneys' fee, pursuant to O.C.G.A. § 13-6-11.


## JURY TRIAL DEMAND

112. Plaintiffs hereby demand a trial by jury on all issues so triable.


## DOCUMENT PRESERVATION DEMAND

113. Plaintiffs hereby demand that the Defendant take affirmative steps to preserve all telephone recordings, data, emails, other recordings, phone records, dialer records, documents and all other tangible things that relate to the allegations herein, Plaintiffs, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, telemarketing, account, sale or file associated with Plaintiffs, and any account or number or symbol relating to any of them.  These materials are very likely relevant to the litigation of this claim.  If Defendant is aware

of any third party that has possession, custody or control of any such materials, Plaintiffs demand that Defendant request that such third party also take steps to preserve the materials.  This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

WHEREFORE, Plaintiffs request that the Court enter judgment in favor of herself and against Defendant, as follows:

A.   Certification of the Class as requested herein;

B.   Appointment of Plaintiffs to serve as Class Representatives;

C.   Appointment of Plaintiffs' attorneys as Class Counsel;

D.   That Plaintiffs be awarded damages in the liquidated amounts provided by statute;

E.   That Plaintiffs be awarded treble damages;

F.   That Defendant be enjoined from further use of an automatic telephone dialing system;

G.   That Defendant be enjoined from further use of an automatic telephone dialing system without the prior consent of the called party;

H.   That Plaintiffs be awarded the expenses of litigation, including a reasonable attorneys' fee;

I.   Prejudgment interest; and,

J.      That Plaintiffs be awarded such additional relief as deemed just and

proper.

Respectfully submitted,

                            SKAAR & FEAGLE, LLP

                    By:    _/s/ Justin T. Holcombe
                            Justin T. Holcombe
                            Georgia Bar No. 552100
                            jholcombe@skaarandfeagle.com
                            Kris Skaar
                            Georgia Bar No. 649610
                            kskaar@skaarandfeagle.com
                            133 Mirramont Lake Drive
                            Woodstock, GA 30189
                            Tel:   (770) 427-5600
                            Fax:   (404) 601-1855

                            James M. Feagle
                            Georgia Bar No. 256916
                            jfeagle@skaarandfeagle.com
                            Cliff R. Dorsen
                            Georgia Bar No. 149254
                            cdorsen@skaarandfeagle.com
                            2374 Main Street, Suite B
                            Tucker, GA 30084
                            Tel:   (404) 373-1970
                            Fax:   (404) 601-1855

                            Abbas Kazerounian
                            California Bar No. 249203
                            *Pro Hac Vice Application To Be Filed*
                            ak@kazlg.com
                            Kazerouni Law Group, APC
                            245 Fischer Avenue, Suite D1
                            Costa Mesa, CA 92626

Tel:    (800) 400-6808
Fax:    (800) 520-5523

BURKE LAW LLC
Alexander H. Burke
*Application Pro Hac Vice to be Filed*
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com

*Attorneys for Plaintiffs*